**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMES P. COLETTA, | : | CIVIL ACTION NO. 06-585 (MLC) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| BOARD OF FREEHOLDERS, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**COOPER, District Judge**

Pro se plaintiff, James P. Coletta ("Coletta") alleges that medical and administrative personnel at the Ocean County Jail ("County Jail") and St. Barnabas Community Medical Center ("Medical Center"), as well as assorted county officials, violated his civil rights under 42 U.S.C. § ("Section") 1983, the Americans With Disabilities Act ("ADA") and the Rehabilitation Act, and committed medical malpractice and negligence. (Dkt. entry no. 45, Amended Compl. ("Compl.").) Currently before the Court are (1) a motion by defendant Dr. Robert Closkey to dismiss the complaint insofar as asserted against him for failure to comply with the affidavit of merit statute, (2) a separate motion for summary judgment by defendants Ocean County Board of Chosen Freeholders ("OCBCF"), Sheriff William L. Polhemus, and Warden Theodore Hutler (collectively "county defendants"), and (3) a separate motion for summary judgment by Marianne McCormick, R.N., Prison Health Services ("PHS"), and Dr. Yu (collectively "medical

defendants") (dkt. entry nos. 60, 62, 71.)  The Court will (1) grant both separate motions insofar as they seek summary judgment on Coletta's federal claims, (2) deny both separate motions insofar as they seek summary judgment on the state law claims without prejudice, (3) deny Closkey's motion without prejudice, and (4) order the parties to show cause why (a) summary judgment should not be granted to Closkey on the federal claims against him, and (b) all state law claims should not be dismissed without prejudice to recommence in state court.

## BACKGROUND

Coletta fell from the top bunk in his cell at the Ocean County Jail on April 8, 2004.  (Compl., at 8.)  He was brought to the Medical Center, where Closkey surgically repaired Coletta's fractured right patella ("knee injury").  (Id.)  Coletta claims that Closkey and a physical therapist ordered him "on a constant movement machine for six (6) hours a day" and that both persons also told him he would be "required to continue physical therapy on the constant movement machine while at the county jail."  (Id. at 9.)  A "constant moving machine" is also known as an electric knee brace.  (See Pl.'s Interrogs., at ¶ 14.)

According to Coletta, "Dr. Closkey spoke with someone from the administration of the county jail and they denied the doctor's request for the transportation of the constant moving machine."  (Id.)  The only evidence offered in support of this

2

argument is a page in Coletta's medical records dated 04-10-04 concerning Coletta's treatment at the Medical Center indicating "CPM to right knee, start at 0-45 degrees and advance as tolerated to 90 degrees.  CPM 4-6 hours per day, when – not in CPM, use knee immobilizer."  (Dkt. entry no. 69-3, Coletta Cert., Ex. F, at 25.)  In Coletta's home care instructions dated 04-12-04, however, he was instructed "no weight bearing on right leg, may use crutches, use knee immobilizer," without any reference to an electric knee brace, "CPM," or constant movement machine. (Id. at 26.)

Closkey does not remember having any conversations concerning a constant moving machine with Coletta, denies ever prescribing a constant movement machine, states that the "standard of care in this case did not require intense physical therapy" and a constant movement machine "was not consistent with the standard of care."  (Dkt. entry no. 60-2, Closkey's Answers to Pl.'s Interrogs., at 82-83.)  PHS admits that "[e]lectric knee braces aren't allowed in the County Jail because the brace or its component parts could be used as a weapon," and that in Coletta's case, "jail administrators determined that the leg brace was not allowed in the jail."  (Dkt. entry no. 62-7, PHS's Answers to Pl.'s Interrogs., at ¶¶ 14 & 17.)

Coletta was discharged from the Medical Center on April 12, 2004, and returned to the County Jail.  (Compl., at 9.)  That

3

same day Coletta went to the charge nurse on duty to get Percocet, which Closkey had prescribed for him.  (Id., at 10; dkt. entry no. 72-1, Coletta's County Jail medical records.)[1] The nurse, after consulting with Dr. Yu, gave Coletta Darvocet instead of Percocet.  (Compl., at 10; dkt entry no. 62, Exs. A & D; dkt. entry no. 72, Ex. B, at 15-16.)  Coletta was examined by Dr. Yu two days later, on April 14, 2004, at which point Dr. Yu increased his dosage of Darvocet and gave him an anti-inflammatory for swelling.  (Compl., at 10; dkt. entry no. 62, Ex. A.)  In addition to Darvocet, Coletta received Tylenol, Motrin and Robaxin.  (Dkt. entry no. 72-4, Coletta's County Jail medical records.)  Coletta told Yu that he wanted the Percocet prescribed by Closkey and that the Darvocet was not working. (Compl., at 10.)

Percocet is not available for inmates of the County Jail. (Dkt. entry no. 62-7, PHS's Answers to Pl.'s Interrogs., at ¶ 3.) Percocet is a narcotic, whereas Darvocet is a non-narcotic pain reliever, and the County Jail does not administer narcotics to

---

[1]    The charge nurse on duty was originally identified as Marianne McCormick, R.N.  (See Compl., at 10.)  However, counsel for the medical defendants notified Coletta via letter on September 18, 2006, that they would be amending their interrogatory answers to reflect the fact that McCormick did not work at the County Jail at the time of Coletta's incarceration. (Dkt. entry no. 72, Exs. G & H.)  The Magistrate Judge has ordered that any issues involving discovery, including the identity of the charge nurse, should be raised within fifteen days of the Court's decision with regard to the summary judgment motions.  (Dkt. entry no. 73.)

inmates.  (Dkt. entry no. 62, Defs. Stmt. Undisputed Facts, at ¶¶
14-15.)  It is the policy of Community Health Services, which
provides staffing to meet the medical needs of the County Jail,
to "stringently restrict[] the use and administration of
controlled substances to the greatest extent possible within the
confines of sound practice of medicine."  (Id., Ex. D, at 28.)
It is also the policy that any "prescription brought in by the
inmate should be reviewed by the CHS physician and replaced as
soon as a CHS prescription is filled or the physician denies
filling that prescription."  (Id., at 50.)

     After being discharged from the Medical Center, Coletta
spent ten days at the County Jail before he was transferred to
the Central Reception Assignment Facility in Trenton, New Jersey,
on April 21, 2004.  (Compl., at 11.)  Coletta is currently
confined in South Woods State Prison, in Bridgeton, New Jersey.
(Coletta Cert., at ¶ 2.)  Coletta claims that he now suffers from
"limited range of motion" in his knee, and that his injury is
irreparable, leaving him "permanently unable to make a living . .
. as a roofer . . . because of the limited movement in [his]
knee."  (Compl., at 11.)  He alleges that this injury "was caused
by not receiving any physical therapy during those very crucial
few weeks following the surgery."  (Id.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears
the initial burden of showing that there is no genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  Once the movant has met this prima facie burden, the
non-movant "must set forth specific facts showing that there is a
genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must
present actual evidence that raises a genuine issue of material
fact and may not rely on mere allegations.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).  At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial."  Anderson, 477 U.S. at 249.  Under this standard, the
"mere existence of a scintilla of evidence in support of the

6

[non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Coletta's § 1983 Claims

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For Section 1983 claims to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  The color of state law element requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

Officials, hence, may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, supervisory liability may not be premised solely on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Some sort of personal involvement, rather, must be alleged.  Id.  Supervisory liability for Section 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior.  Baker v. Monroe Twp., 50 F.3d 1186, 1190, 1191 n.3 (3d Cir. 1995).

The medical defendants here do not contest that they acted under the color of state law. "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." West v. Atkins, 487 U.S. 42, 55-56 (1988). A physician working in the prison system acts under color of state law because: (a) the state authorizes a physician to treat a prisoner to fulfill the state's constitutional duty to provide adequate medical care; and (b) the prisoner, due to the incarceration, has no opportunity to obtain medical care other than to accept the physician's treatment.[2] Id.

Once it has been established that the defendants acted under color of state law, the Court must identify the federal right they allegedly violated. See Groman, 47 F.3d at 633. Here, Coletta alleges that defendants were "deliberately indifferent" to his medical needs and denied him adequate medical care in violation of the Eighth Amendment by (1) refusing to provide him with physical therapy through the electric knee brace, (2) refusing to fill his prescription for Percocet and instead prescribing Darvocet, and (3) being aware of but doing nothing to

---

[2]     The argument of the county defendants, to the extent it addresses the lack of individual or direct conduct sufficient to expose them to supervisory liability for any Section 1983 violations, will be addressed in the following section.

prevent the danger to himself and other inmates created by having

top bunks with no ladders.[3]  (Compl., at 11.)

### A.   Coletta's Eight Amendment Claims

"[D]eliberate indifference to serious medical needs of

prisoners" violates the Eighth Amendment, which is applicable to

the states through the Fourteenth Amendment, because it

constitutes "unnecessary and wanton infliction of pain contrary

to contemporary standards of decency." Helling v. McKinney, 509

U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth

Amendment medical-care claim, an inmate must establish that (1)

he had a serious medical need, and (2) prison officials were

deliberately indifferent to such medical need. Rouse v.

Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A medical need is considered serious if it is one a

physician would diagnose as requiring treatment or one that a lay

person would easily recognize as needing a doctor's attention.

Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326,

347 (3d Cir. 1987).  Further, if denial or delay causes

_____

[3]     Coletta's claim concerning the lack of ladders for the
bunk beds, on its face, does not state a cause of action for
deliberate indifference because it does not address conduct
involving his serious medical need.  Coletta alleges the lack of
ladders merely "contributed to, and proximately caused" his knee
injury, not that the lack of ladders was related to his treatment
by defendants subsequent to sustaining his knee injury. Coletta
makes an identical claim concerning the bunk beds in his third
cause of action for negligence, and the Court therefore will not
address it as part of his claims arising under the Eighth
Amendment.

"unnecessary and wanton infliction of pain," a life-long handicap, or permanent loss, the medical need is considered serious.  Id.

The deliberate indifference standard is a high standard for a prisoner to meet.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  "Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'"  Lanzaro, 834 F.2d at 343 (internal citations omitted).  Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates."  Id. at 347. Examples include "situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence" and "where necessary medical treatment is delayed for non-medical reasons."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quotations omitted).

Not every complaint by a prisoner concerning the adequacy of medical care, however, constitutes a violation of the Eighth Amendment.  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). An unwitting failure to provide adequate medical care, a negligent diagnosis or treatment, or even medical malpractice,

does not support a valid claim under the Eighth Amendment.
Estelle, 429 U.S. at 106; White, 897 F.2d at 108 ("Mere medical
malpractice cannot give rise to a violation of the Eighth
Amendment").  Thus, in order to state a cognizable claim for
failure to provide medical care in violation of the Eighth
Amendment, a prisoner must allege acts or omissions that are
sufficiently harmful to offend "evolving standards of decency."
Estelle, 429 U.S. at 106.

Viewing the evidence in a manner most favorable to Coletta,
a reasonable jury could find that his knee injury constitutes a
serious medical condition because it required medical attention,
and a delay in treatment of Coletta's knee injury could result in
a life-long handicap.  See Lanzaro, 834 F.2d at 347.  Moreover,
"a medical condition which threatens a plaintiff's ability to
walk, even on a non-permanent basis, falls within the ambit of a
serious medical need."  Taylor v. Plousis, 101 F.Supp.2d 255, 262
(D.N.J. 2000) (finding that plaintiff's "ill-fitting and
deteriorating prosthesis" that "caused him to suffer severe pain
and impaired his ability to walk" was a serious medical need).

The issue, therefore, is whether defendants' conduct of (1)
denying plaintiff access to an electric knee brace for physical
therapy and (2) prescribing Darvocet instead of Percocet
constitutes deliberate indifference.  The Court finds,
considering the evidence in the light most favorable to Coletta,

12

that none of the defendants' conduct rises to the level of deliberate indifference.  No reasonable jury, therefore, could find that defendants' alleged failure to provide Coletta with adequate medical care violated his constitutional rights.

Coletta argues that defendants committed the following acts manifesting deliberate indifference toward his knee injury:

(1) Failing to provide proper or adequate custody, care or treatment of the plaintiff by setting policy which did not allow for the medication plaintiff needed and not providing the facilities or equipment to allow for the necessary physical therapy for the plaintiff housed for an extended period of time.

. . . .

(5) Failing to set policy or procedures for the transportation of necessary medical equipment from the hospital to the jail when prescribed by doctors.

(6) Refusal to provide essential care by denying the plaintiff the prescribed medication and physical therapy after emergency surgery.

(7) Wrongfully causing the plaintiff to be discharged from Community Medical Center, where he was receiving the prescribed physical therapy, to the medical unit of the County Jail, after just denying the surgeon's request for transportation of the necessary constant moving machine for continued physical therapy. Knowing he would not be receiving any physical therapy at all.

(8) Failing to obtain the prescribed, extremely necessary therapy from an outside facility, since the jail did not have the facilities or equipment to provide the care themselves.

(9) Not arranging for the immediate transfer of the plaintiff to a State prison facility that does have the equipment, facilities and medication required for his medical care. Knowing because of policy that plaintiff would not be transferred to a State facility for a certain amount of time after sentencing.

(Compl., at 12-13.)[4]  Coletta claims that the lack of physical
therapy while at the County Jail has caused the limited range of
motion he currently has in his knee.  (Id.)

The medical defendants have met their burden of
demonstrating entitlement to summary judgment on Coletta's
deliberate indifference claims against them.  In support of their
motion, the medical defendants have submitted Statements of
Undisputed Material Facts and a number of documentary exhibits,
including Coletta's medical records.  (Dkt. entry nos. 71 & 72.)
The voluminous medical records demonstrating the medical
defendants' treatment of Coletta's knee injury contradict any
claim by Coletta that they were deliberately indifferent to his
knee injury and did not respond to his grievances.  Coletta's
claims are nothing more than complaints that the medical
defendants did not give Coletta the treatment he wanted, i.e.,
Percocet and an electric knee brace.

Defendants must be "accorded considerable latitude in the
diagnosis and treatment of inmates."  Durmer v. O'Carroll, 991
F.2d 64, 67 (3d Cir. 1993)  The Court recognizes that the Third
Circuit has held that it was improper for a District Court to
grant summary judgment to defendants on an inmate's deliberate

---

[4]     The numbered paragraphs of Coletta's complaint
addressing his claims concerning the bunk beds have been omitted
because they are not relevant to his deliberate indifference
claim.  See supra, n. 3.

indifference claim where the inmate was denied physical therapy for eighteen months following a stroke. Id. at 68. The physical therapy allegedly deprived in this case, however, is not analogous to the situation in Durmer because Coletta offers no evidence that he required physical therapy during the ten days that he was in the County Jail. Coletta also fails to provide any evidence to contradict Closkey's assessment that the proper standard of care for Coletta's knee was to keep it in the knee immobilizer and that physical therapy was not required immediately following the accident. See Abdul-Karim Ali v. Terhune, 113 Fed.Appx. 431, 436 (3d Cir. 2004) (distinguishing Durmer where surgical procedure at issue did not have to be performed within certain window of time).

Coletta relies heavily upon Jackson v. Fauver, in which the Court denied defendants' motion for summary judgment because there was a genuine issue of fact as to length of delay in providing the inmate with a prescribed knee brace. 334 F.Supp.2d 697, 735 (D.N.J. 2004). Here, however, Closkey's home care instructions given upon his discharge from the Medical Center did not prescribe an electric knee brace or other form of physical therapy that was refused by prison doctors and officials, and Coletta does not present any evidence that one was necessary for his treatment. The discharge form completed by Closkey only recommended use of the knee immobilizer and crutches, neither of

which were denied to Closkey while at the County Jail.  "[A] Court will generally not find deliberate indifference when some level of medical care has been offered to an inmate." Christy v. Robinson, 216 F.Supp.2d 398, 413-14 (D.N.J. 2002).

Whether Closkey or another doctor may have at one point ordered the constant moving machine or some other type of physical therapy for Coletta is not proof that it is medically necessary for Coletta to receive the electric knee brace.  This merely shows that physical therapy may have been the preferable course of treatment.  Defendants, however, cannot be held liable for merely failing to follow a preferable course of treatment. See Natale, 318 F.3d at 582 (stating that deliberate indifference exists only where defendants deny a plaintiff necessary medical treatment); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) ("Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment") (quotations omitted).  Defendants also cannot be held liable for merely failing to satisfy Coletta's preferences that he be able to use the electric knee brace for physical therapy. See Christy, 216 F.Supp.2d at 416 (noting that the "Constitution does not guarantee that every prisoner will receive every type of treatment he desires, or even may need").

16

Coletta's claim that he was denied Percocet and only given Darvocet also fails to support a claim of deliberate indifference by defendants.  Prison officials and medical personnel may be liable for deliberate indifference where an inmate is persistently denied access to necessary, prescribed medication on numerous occasions.  <u>White</u>, 897 F.2d at 109-10.  The record demonstrates here that defendants did not engage in a pattern or practice of consistently denying plaintiff access to his medications, but rather consistently gave Coletta a variety of pain relieving medicine such as Darvocet, Tylenol, Motrin and Robaxin.  (Dkt. entry no. 72-4, Coletta's medical records.) Coletta's only claim concerning his medicine is that he was not given the Percocet prescribed to him by Closkey while at the Medical Center.  The County Jail's policy or practice of not providing prisoners with Percocet and instead supplying non-narcotic pain relievers does not so violate "evolving standards of decency" as to amount to deliberate indifference.  <u>Estelle</u>, 429 U.S. at 106.

The county defendants are also entitled to summary judgment. Coletta has not produced any evidence of a policy or custom, enacted by the county defendants individually or collectively, which amounts to deliberate indifference to Coletta's medical needs.  <u>See</u> <u>Taylor</u>, 101 F.Supp.2d at 264 (granting county defendants' summary judgement as to Section 1983 claims where no

evidence of policy or custom amounting to deliberate indifference).  Coletta also has not produced any evidence that would create supervisory liability for Polhemus, as sheriff, or Hutler, as warden, for any Section 1983 violations, because there was no indifference to Coletta's serious medical needs they could have been aware of.  See Baker, 50 F.3d at 1190; Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (holding that non-medical supervisor may be liable only if he had knowledge of or reason to know about the alleged medical mistreatment); see also Taylor, 101 F.Supp.2d at 265 (granting summary judgment to sheriff of county jail where plaintiff failed to proffer evidence that sheriff knew of and disregarded plaintiff's medical needs).

The Court, after drawing all inferences in favor of Coletta, therefore finds that the evidence in the summary judgment record fails, as a matter of law, to demonstrate the type of deliberate indifference necessary to establish a violation of the Eighth Amendment.

**B.   Coletta's Fourteenth Amendment Claims**

Coletta alleges in his second cause of action that defendants denied him equal protection of the laws in violation of the Fourteenth Amendment by (1) failing to provide him with a safe environment by not providing a ladder for his bunk bed, (2) not ensuring he received follow-up medical care for his knee injury, and (3) ignoring his medical grievance forms. (Compl., at 14-15.)

18

To assert an equal protection claim under the Fourteenth Amendment, plaintiff must make a prima facie showing of both discriminatory effect and discriminatory purpose.  Wayte v. United States, 470 U.S. 598, 609 (1995).  Coletta makes no mention of what protected class he belongs to, or what disparate treatment he experienced.  Coletta has failed to show, even viewing the facts in a light most favorable to him, that he was singled out or treated differently than other inmates because he was a member of a protected class.  The Court, therefore, finds as a matter of law that, on this record, no reasonable jury could conclude that plaintiff was discriminated against because of his protected status in violation of the Equal Protection Clause of the Fourteenth Amendment.

## III. Coletta's ADA and Rehabilitation Act Claims

Coletta generally avers that defendants violated the ADA and the Rehabilitation Act by failing to provide adequate facilities for his physical therapy.  (Compl., at 2; dkt. entry no. 76, Def. Reply Br., at 5-6.)  Coletta fails to specify which sections of the ADA and Rehabilitation Act defendants violated, and none of the four causes of action asserted by Coletta in the complaint assert claims under or even cite to the ADA or Rehabilitation Act.  The Court therefore assumes that Coletta is alleging that defendants violated Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  State prisons fall within the definition of "public entity" under Title II of the ADA, and thus state prisoners are entitled to the protections of Title II of the ADA. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998).  Title II of the ADA is interpreted to be consistent with the Rehabilitation Act, which contains nearly identical language. See Chisolm v. McManimon, 275 F.3d 315, 325 n.9 (3d Cir. 2001).

Here, however, even assuming for purposes of this motion that Coletta's knee injury makes him a "qualified individual with a disability," defendants' failure to provide Coletta with the electronic knee brace does not constitute discrimination against him in violation of the ADA and Rehabilitation Act.  Coletta does not argue that he was denied medical care because of his knee injury, but rather merely that he did not receive the medical services he desired, i.e. use of the electronic brace for physical therapy.  This claim does not constitute a claim of discrimination under the ADA.  See Hubbard v. Taylor, 452 F.Supp.2d 533, 545 (D. Del. 2006) (granting summary judgment on prisoner's claim under the ADA because prisoner failed to show discriminatory treatment in addition to his deliberate indifference claim).

20

## IV.  Coletta's Negligence and Medical Malpractice Claims

Coletta's third cause of action only alleges claims constituting "the tort of Negligence under the laws of the State of New Jersey," while his fourth cause of action solely addresses "the tort of Medical Malpractice in violation of the laws of the state of New Jersey." (Compl., at 15-16.)  The Court may dismiss these remaining state law claims without prejudice to reinstate in state court.  See 28 U.S.C. § 1367(c)(3), (d) (authorizing court to decline exercise of supplemental jurisdiction over state law claim if original jurisdiction claim is dismissed, and tolling limitations period for state law claim to be brought in state court).  It is unnecessary, therefore, to address the merits of (1) Closkey's motion to dismiss the complaint insofar as asserted against him for failure to comply with the New Jersey Affidavit of Merit Statute, N.J.S.A. § 2A:53A-26, et seq.[5] (dkt entry no. 60); (2) the part of the medical defendants' motion for summary judgment as to Coletta's third and fourth causes of action (dkt. entry no. 71); and (3) the part of the county defendants' motion for summary judgment as to the third cause of action (dkt. entry

---

[5]     Coletta's failure to comply with the affidavit of merit statute has no bearing on the Court's analysis of his Eighth Amendment claim against Closkey because "the affidavit of merit statute is not a prerequisite for a federal civil rights action against a doctor who is deliberately indifferent to his or her patient's medical needs."  Seeward v. Integrity, Inc., 815 A.2d 1005, 1011 (N.J. App. Div. 2003).

no. 62), as they will be rendered moot by the dismissal of Coletta's state law claims.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will (1) grant the separate motions for summary judgment by the medical defendants and the county defendants as to Coletta's federal causes of action; (2) issue an order to show cause why the Court should not also, for the reasons stated in this memorandum opinion, grant summary judgment on Coletta's federal causes of action against Closkey; and (3) issue an order to show cause why Coletta's state causes of action should not be dismissed without prejudice to reinstate in state court.  An appropriate order and judgment, and order to show cause, will be issued.


          s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

22